## Huffman and Foreman *versus* McCrea.

1. A court should charge that a defence in ejectment under the Statute of Limitations has failed, if any essential element in such a defence be wanting.

2. A map of the Holland Land Company, under whom a party claimed, being ancient and in long use, was evidence of boundary against him as an admission of the company.

3. In order to hold a whole tract by possession, there should have been an entry and residence, or cultivation without residence, claiming the whole.

4. If a part be claimed through cultivation without residence, there should be a designation of boundary to hold more than the portion actually cultivated and enclosed.

October 29th 1867. Before WOODWARD, C. J., THOMPSON, STRONG, READ and AGNEW, JJ.

Error to the Court of Common Pleas of *Armstrong county :* No. 8, to October and November Term 1867.

This was an action of ejectment, brought September 22d 1857, by John McCrea against John Kuhn, John Huffman, Daniel Doverspike and Andrew Foreman, for a tract of 226 acres of land, in Red Bank and Mahoning townships ; Mahoning creek ran through the tract. That part on the north side of the creek was claimed by John Kuhn. When the case was called for trial, December 15th 1863, it appeared that Kuhn had died since the suit had been brought, and that there had been no substitution ; the jury was therefore discharged from giving a verdict for that part of the land which had been claimed by him. The plaintiff showed a warrant, No. 3832, dated April 22d 1793, to Charles Campbell ; survey August 27th 1793, of 220½ acres, returned July 13th 1795. Patent of July 14th 1795, to Campbell for the same land. From Campbell, by various conveyances, the title passed to McCrea, the plaintiff, in whom it vested July 19th 1857. He also gave evidence by Meredith, a surveyor, of his running this Campbell survey and a draft made by him.

The defendants denied that the Campbell survey was located on the land in dispute, and alleged that it was included in a survey to Leroy, Herman & Co. (the Holland Land Company).

They gave in evidence warrant 3119 to the Holland Land Company, dated December 13th 1792, survey for 971 acres, returned April 28th 1796, and patent to the Holland Land Company, dated November 23d 1827.

James E. Brown, a surveyor, testified that in July 1830, he had run part of 3119 and an adjoining tract, 2903, for James Hamilton, executor, the tract being claimed as belonging to Thomas Hamilton estate ; that Thomas McConnell was on the ground, and he claimed to the creek as residuary devisee, that Kuhn claimed

under a contract with McConnell. The witness was agent of the Hamilton estate, and sold all 3119, north of the creek, to George Artz.

David Putney, another witness for defendants, testified that he purchased part of the land in dispute at public sale, in 1833, as assignee of Robert Hotten, who had a contract for it with the Holland Land Company; he got possession in the same year; that he claimed all the disputed land; used it as he used his own land, cut timber, paid taxes, &c.; sold 100 acres in 1841 to Huffman, and 150 acres to Foreman; and all lying south of the creek to Thomas McCullough, who sold to Doverspike; that witness cut timber on the land; that his vendees took possession of the land immediately after their purchase, and have kept it ever since. Witness put a tenant named Taylor on the land claimed by Doverspike in 1835 or 1836, and he thought Taylor left the land in 1838 or 1839. Other witnesses testified that Taylor was in a cabin on the land in 1830 or 1831, when they were clearing ten acres of it under a contract from Hotten, who claimed to own 900 acres, which he described to witnesses as including the land in dispute; that a man named Callen went into the cabin when Taylor left; that the cabin was turned into a school-house. Other witnesses testified that Joseph Mercer came on to the land in dispute forty years before under a Mr. Lawson, and lived there four or five years, that Jacob Beer followed him, Mercer having sold his improvement right to him. Taylor came in after Beer, then McCullough, who sold to Doverspike; that he farmed the place, and has lived there ever since.

There was other evidence of the same character, and also evidence of the running of the surveys.

Defendants gave in evidence, deed from the Holland Land Company to McCullough December 15th 1842, for 85 acres, part of No. 3119; deed for same from McCullough to Doverspike, dated March 30th 1852: Also contract between Putney and Foreman, dated January 4th 1839, for 150 acres, part of 3119; deed from Wilhelm Willink and others to Foreman and others, dated February 24th 1841, for 151 acres 91 perches, part of 3119: Also a deed from the Holland Land Company to Huffman, dated September 21st 1842, for 100 acres, part of 3119: Also duplicate of Red Bank township of unseated land for 1843: "Tract David McCullough, tax 58 cents, value $100;" deed from county treasurer to county commissioners, dated June 14th 1844, for above assessed tract; assignment of commissioners to Doverspike of the same in 1860: Also, duplicates of Plumcreek township from 1817 to 1821: "Leroy, Harman & Co., 799, No. 3119, unseated:" Also, duplicates of Wayne township from 1835 to 1839: "D. Putney, No. 3119, 820 acres, Leroy, &c., seated;" Also, 1840,

[Huffman v. McCrea.]

D. Putney, 802 acres, 3119, Harman Leroy:—marked on edge of duplicate "transferred to John Doverspike 120 acres, and Andrew Foreman 150 acres:" Also, duplicates of Red Bank township of 1844, 1845, 1847 and 1848: "John Huffman, 100 acres seated." Of 1842, 1843, 1844, 1845, 1847 and 1848: "Andrew Foreman, 120 acres seated." Of 1842, 1844, 1845, 1847 and 1848: "Daniel Doverspike, 120 acres seated."

The defendants offered in evidence, articles of agreement between James Hamilton, executor, &c., of Thomas Hamilton, deceased, by his agents, J. E. Brown and George Artz, dated February 24th 1838, for a tract of land in Red Bank township, adjoining Mahoning creek, the Holland Land Company, 2903, containing 158¼ acres, being that part of tract 3119 north of Mahoning creek; "to be followed by evidence that the contract was made in pursuance of a written purchase from Robert Hamilton; and that James Hamilton afterwards recognised and ratified the same, and Artz took actual possession under the same and made valuable improvements, and afterwards sold to Thomas McConnell. This evidence is not offered for the purpose of showing title in any person, but acts of ownership and color of title to justify an entry, and bear upon the question of limitation."

Plaintiff's attorneys objected on the ground that it does not appear that J. E. Brown had any authority to make such contracts, and that they are not evidence of ownership or title, and not evidence for any purpose at this stage of the case, and because the contracts are void for want of authority to make them.

The court sustained the objection for the reasons assigned by plaintiff's counsel, and sealed a bill of exceptions.

The defendants then rested.

The plaintiff, in rebuttal, gave evidence on the question of possession. He also offered in evidence a draft of the Holland Land Company of land in Armstrong, Jefferson and Indiana counties; and called J. E. Meredith who testified: "When I first saw that draft it was in the hands of Mr. Gaskill in 1836. I did his surveying; he was the agent of the Holland Company; Gaskill used to refer to it; that draft is the original, representing the subdivisions. Afterwards Dr. Gilpin brought the draft to me to have a copy made of it; he acted as agent of the new company; I surveyed a good deal for Mr. Gaskill and the new company; I generally found this draft correct; I think I never saw that map before I commenced surveying for Gaskill; I never ran all the lines on this map; I surveyed some 23,000, principally in Jefferson and Indiana counties; the paper, when I first saw it, looked old, smoky—looked brown and old."

The defendants objected to the admission of the draft in evidence, but the court admitted it, and sealed a bill.

6 P. F. Smith—7

[Huffman *v.* McCrea.]

The court (Buffington, P. J.,) after recapitulating the evidence bearing upon the question of original title, charged :—

*** " So far as the question of original title is concerned, these are the respective claims of the parties, and the jury are instructed that if they find, from the evidence, that the warrant to Charles Campbell was actually located upon the land in dispute, prior to the survey of the Holland Land Company, so far as this branch of the case is concerned, the plaintiff would be entitled to recover in this action all the land embraced by the Campbell warrant in the possession of the defendants.

" The defendants further contend that even if the jury should find that the land in dispute was embraced by the Charles Campbell survey, still the evidence shows such a continued and adverse possession of the land in controversy by the defendants and those under whom they claim, as must divest the title of the original warrantee and those claiming under him, and confer a perfect title under the Statute of Limitations, upon the defendants in this suit.

[" Upon this branch of the case the jury are instructed that there is no sufficient evidence in the cause which would confer a title upon the defendants, or either of them, by virtue of the Statute of Limitations ; but upon the whole evidence there is no such possession shown as would avail to protect the possession of defendants, or either of them, in this action."]

As to the land claimed by Doverspike, he charged :—

" If the land was unseated in 1843, and so returned and sold by the treasurer to the county of Armstrong, the title was outstanding in the county at the bringing of this suit in 1857, and the plaintiff cannot recover the land embraced by the treasurer's deed."

The jury found " for the plaintiff with the exception of the 58 acres included in the commissioners' deed, being that part claimed by Daniel Doverspike; and as to the 58 acres they found for defendant, Daniel Doverspike."

Huffman and Foreman took a writ of error, and assigned for error the part of the charge enclosed in brackets and the ruling of the court on the questions of evidence.

*E. S. Golden* and *H. D. Foster*, for plaintiffs in error, cited Ament *v.* Wolf, 9 Casey 331; Beaupland *v.* McKeen, 4 Id. 134; Wolf *v.* Ament, 1 Grant 150; Woods *v.* Ege, 2 Watts 333; Blackburn *v.* Holliday, 12 S. & R. 140.

*D. Phelps*, for defendant in error, cited Groft *v.* Weakland, 10 Casey 304; Olwine *v.* Holman, 11 Harris 279; Ewing *v.* Alcorn, 4 Wright 492; Washabaugh *v.* Entriken, 10 Casey 74;

Hole v. Rittenhouse, 1 Wright 116; Sorber v. Willing, 10 Watts 141.

The opinion of the court was delivered, January 7th 1868, by

THOMPSON, C. J.—The learned judge charged the jury peremptorily that the defendants, the plaintiffs in error, had failed to make out a defence, under the Statute of Limitations, against the plaintiff's right to recover. If any essential element in such a defence were wanting, it was proper so to charge, as we have more than once held: 7 Casey 120; 10 Id. 304.

The assignment of error to this charge was not on account of the rule, but upon a supposed error as to the facts. Wherein the error consisted in this particular I have not been able to see. To make this manifest, if it existed, was a duty on the plaintiffs in error, but they have failed to do so. The adverse, notorious, hostile and continued possession by the defendants, or others under whom they claim, for the period necessary to give title under the statute, does not appear, so far as we can discover. Nor does it appear that the testimony on these points was of that conclusive and convincing character which demanded its submission to the jury.

Charles Campbell's warrant was located in 1793, a year before that of the Holland Company, and we think its location on the ground is not to be disputed. That the Holland Company so regarded it, is evidenced by their general map or draft of the company land, which we may say here, we think was proper evidence; not only because it was the map or draft in use by the company under whom the defendants claim, but because, being ancient and long in use, it was evidence of boundary upon the principle of an admission by the company. Such maps are always receivable in questions of location and boundary like the present. This being the situation of the Campbell tract, in order to hold the whole, there should have been an entry and residence, or cultivation without residence, claiming the whole; or if a part only were intended to be claimed through cultivation without residence, then there should have been some designation of boundary in order to hold more than the portion actually cultivated and enclosed. Nothing of this is so apparent in the testimony, as to demonstrate error in the charge of the learned judge. Indeed it seems to us there was an entire failure to show this. We may be in error as to this: if we are, it is owing to the difficulty in comprehending the bearing of the testimony, as it is presented, but we think we are not. If an adverse possession was commenced within the lines of the Campbell survey by the defendants or either of them, or by either of the persons through whom they claim, it was not shown to have been continuously kept up for the requisite number of years to make title under the statute, so

far as we can discover. We think, upon the whole, this assignment of error is not sustained.

2. The 2d assignment of error upon the admission in evidence of the map already referred to in the possession of the agents of the Holland Company, or perhaps rather in the hands of its successors now, has been sufficiently noticed. There was no error in that.

3. The 3d error is to the rejection of the Robert Hamilton article of agreement; but we have not been shown wherein the defendants were prejudiced by it. Indeed I have not been able to discover any connection between an entry under that agreement and the claim of the defendants below. The land embraced by it lies north of the Mahoning, while that claimed by the defendants lies south, if we understand the testimony. If it was meant by the offer to show an entry under color of title upon the Campbell tract, this might be all very well, but the rejection of the article did no harm unless it had been proposed to be shown that possession had been taken under it, and maintained adversely and uninterruptedly for twenty-one years, and that it enured in some way to the benefit of the defendants. We cannot see that this appeared, and hence we discover no error in this particular. Whether we have been fortunate enough to meet the point intended to be presented in this case I cannot confidently say. If we have not, it should be attributed to the want of a clear presentation of the facts in the case. Seeing no error,

The judgment is affirmed.