## Schmitt, Appellant, *v.* Carbondale et al.

*Evidence—Ancient documents—Real property—Dedication—Adverse possession—Public parks—Condemnation proceedings — Estoppel.*

1. A map, found in the office of a corporation which had conveyed land shown upon the map, is admissible in evidence as an ancient document where it is shown to be more than thirty years old, is to all appearances genuine and has been acted upon.

2. A citizen acquires no rights against the public by the maintenance of a fence or building in a highway and the same rule applies to a public park.

3. Where a building has been erected upon land which had been dedicated to the public for use as a public park, the passage of a municipal ordinance providing for the condemnation of the land occupied by such building does not estop the municipality from claiming the property, especially where no viewers were appointed and nothing further was done in reference to the ordinance.

4. A canal company owning a tract of land in a village laid the

land out in lots, and left a triangular piece for public use as a park. The purchaser of a lot abutting upon the park fenced in a part of the land which had been dedicated to the public. The encroachment existed for more than thirty years. Such property owner was proceeding to make additions to a building so as to extend it over the land lying in the park when he was prevented by the city officials. He brought a bill in equity to restrain the city officials from interfering with his additions to the property. It appeared that the city had passed an ordinance years before, providing for the condemnation of the land occupied by plaintiff, but no viewers were appointed and no further steps were taken. Plaintiff claimed that the city was estopped by such action to allege that the land was not his and also that he had acquired title by adverse possession. *Held,* the lower court did not err in dismissing the bill.

Argued Feb. 19, 1917. Appeal, No. 366, Jan. T., 1916, by plaintiff, from decree of C. P. Lackawanna Co., Jan. T., 1916, No. 12, in equity, refusing an injunction in case of W. H. Arthur Schmitt v. City of Carbondale; James B. Murrin, Mayor; Frank J. O'Boyle, Chief of Police. Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for an injunction. Before EDWARDS, P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law, and the decree of the court.

*A. A. Vosburg,* with him *J. B. Jenkins,* for appellant. —The unrecorded map found in the office of the D. & H. Canal Company was improperly admitted in evidence: Biddle's Lessee v. Shippen, 1 Dallas 19; Franey v. Miller, 11 Pa. 434.

The municipality never accepted the dedication of the land in dispute for park purposes and repeatedly recog-

nized, as private property, the land claimed by plaintiff: Dickson v. Meadville, 23 Pitts. L. J. 127; Wilkes-Barre Paper Mfg. Co. v. Wilkes-Barre, 5 Kulp 333; Yost et al. v. South Bethlehem Boro., 4 Lanc. Law Rev. 62; State v. Trask, 6 Vt. 355.

*J. E. Brennan,* for appellees.—The map was admissible in evidence: Huffman & Foreman v. McCrea, 56 Pa. 95; Commonwealth v. Alburger, 1 Wharton 469; Sweigart v. Richards, 8 Pa. 436; Smucker v. Penna. R. R. Co., 188 Pa. 40; Philadelphia to use v. Hinkle, 64 Pa. Superior Ct. 495.

The plaintiff cannot successfully claim title by adverse possession: Hileman v. Hollidaysburg Boro., 47 Pa. Superior Ct. 41; Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194; Com. v. Moorehead, 118 Pa. 344; McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418.

OPINION BY MR. JUSTICE WALLING, April 16, 1917:

This suit in equity involves the question of the location of the line of a public highway.

Prior to 1843, the Delaware & Hudson Canal Company was the owner of a tract of land in the village, now city, of Carbondale, and in plotting the same a triangular piece of land was left open for public use as a park, and known as "the Parade." It is shown, with well defined boundaries, on an ancient map in the possession of the company. Lots appear on the map, which were conveyed bounded by the Parade. For nearly fifty years, prior to 1890, the Parade was used generally by the public as a passageway and for all purposes of a public common. Meantime streets had been opened on the borders of the Parade, Main street on the west, Sixth avenue on the south and Park Place on the northeast. In or about the year last mentioned the city constructed an iron fence around that part of the Parade inclosed by these streets, and therein was placed a monument and a fountain; and, at about the same time, the cartway in

Sixth avenue was paved. Church street extends in a northerly and southerly direction and is a short distance east of the intersection of Park Place and Sixth avenue. It is about 455 feet from Main street to Church street, and the land facing on the south side of the Parade (now Sixth avenue) was subdivided into lots as a part of the original plot.

In 1843, the company sold one of the lots facing sixty-five feet on the Parade to James Clarkson, a part of which by sundry conveyances is now owned by plaintiff, and thereon is a two-story frame building, which stands about one foot back from the south line of the Parade as originally dedicated. However, from the time of or shortly after the purchase by Clarkson down to this time the owners of the lot have had adverse possession of a strip of land some five feet in width extending in front of the lot and within the lines of the Parade as dedicated. This strip of land was inclosed for many years as part of the lot by a fence, and near the west end thereof was formerly a well, and toward the east end for about thirty years last past a porch stood thereon in front of the building, and some of the strip of land has been used as a lawn and flower bed. The owners of some of the other lots have also made encroachments upon the south side of the Parade. The original deed to Clarkson describes his lot as being 130 feet in depth, from the Parade south, which it is exclusive of said five feet.

While there is some controversy, yet taking the case as a whole it fully warrants the finding that plaintiff's paper title does not include the disputed land, and it appears with equal clearness that plaintiff and those through whom he claims title have had exclusive possession thereof for much more than twenty-one years.

In 1897, the city passed an ordinance providing as we understand the facts for the condemnation, inter alia, of the land here at issue, and a report was made that an agreement with the property owners as to the damages

and benefits could not be had; but no viewers were appointed, and nothing further done with reference thereto. In 1915, plaintiff in remodeling his building was proceeding to add a new store front thereto, which would occupy a portion of said five feet, when he was prevented by the officials of the city and filed this bill to restrain their interference.

After a full hearing the court below entered a final decree dismissing the bill, from which plaintiff took this appeal. The record seems free from error. The map in the office of the Delaware & Hudson Canal Company was found in the proper custody, was shown to be more than thirty years old, was to all appearances genuine, had been acted upon and was competent as an ancient document: Commonwealth v. Alburger, 1 Whart. 469; Huffman & Foreman v. McCrea, 56 Pa. 95; Smucker v. Penna. R. R. Co., 188 Pa. 40; and see Barnett v. Yeadon Borough, 37 Pa. Superior Ct. 97.

Plaintiff's claim by adverse possession would be well founded as against private parties but cannot prevail against the public, whose rights are not lost by encroachment however long continued: Commonwealth v. Moorehead, 118 Pa. 344; McGuire v. Wilkes-Barre, 36 Pa. Superior Ct. 418.

It scarcely requires the citation of authorities to support the proposition that a citizen acquires no rights as against the public by the maintenance of a fence or building in a highway, and the same rule applies to a public park. The acceptance and use by the public of the Parade in question as a park embraced all the land dedicated for that purpose, although some parts thereof along the border lines may not have been actually used as such. It is like a dedicated street, the acceptance of which constitutes it of the full width, although only the traveled portion may be used by the public: See State Road, 236 Pa. 141.

The disputed land being in the Parade, the fact that

it is not within Sixth avenue as opened on the ground is not controlling.

As plaintiff's lot in the original deed was bounded on the north by the Parade, he is not helped by the fact of a surplus in that block. If he is entitled to that, or any part of it, he must find it within the lines of the block and not in the public park or street.

The passage of the ordinance does not estop the city from claiming the land in question; and the fact that the proceedings thereunder were apparently abandoned would suggest that they may have been started under a misapprehension. The facts found by the learned chancellor are in accordance with the evidence and his legal conclusions seem to be entirely accurate.

The assignments of error are overruled and the decree is affirmed at the cost of the appellant.