Pennsylvania Canal Company, Appellant, *v.* the Lewisburg, Milton & Watsontown Passenger Railway Company, E. A. Tennis, J. W. Cramp, and the E. A. Tennis Construction Company.

*Street railway—Bridge owned by canal company—Consent of canal company essential.*

A canal company holding title to its property in fee is such an owner of land as to make its consent necessary before a street railway company may cross the canal upon a bridge, carrying a public highway, used by general public, across said canal.

*Jurisdiction, equity—Injunction—Erection of street railway.*

Equity will interpose to protect a landowner if he comes in proper time by enjoining the construction of a street railway across his land.

Argued Oct. 24, 1898. Appeal, No. 71, Oct. T., 1898, by plaintiff, from decree of C. P. Northumberland Co., No. 214, Equity Docket, Dec. T., 1897, refusing injunction and dismissing plaintiff's bill. Before RICE, P. J., REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by ORLADY, J.

Hearing on bill, answer and proofs. Before SAVIDGE, P. J.

It appears from the record that a bill was brought praying for an injunction to restrain the defendant railway company from constructing a street railway to be operated by electricity upon an overhead bridge which was part of the public road and crossing plaintiff's canal.

The court below dismissed the bill and refused the injunction in an opinion reported in 7 Dist. Rep. 244. Plaintiff appealed.

*Error assigned* among others was (1) in not issuing an injunction, in accordance with plaintiff's first prayer for relief, which prayer was, "Restrain defendant from occupying and using the property of the plaintiff for railway purposes."

*Cyrus G. Derr* and *J.ʼC. Bucher*, for appellant.—The estate of the Pennsylvania Canal Company in the property which is the subject-matter of this controversy is an absolute estate in fee simple, unrestricted both as to time and use, and differing in no material respect from the estate which individuals acquire in the farms, houses and other lands ordinarily purchased by them : Haldeman v. Penna. Railroad Co., 50 Pa. 425 ; Craig v. Allegheny, 53 Pa. 477 ; Coal Co. v. Price, 81 Pa. 156, 175.

The defendant company, claiming corporate existence under the provisions of the act entitled " An act to provide for the incorporation and government of street railway companies in this commonwealth," approved May 14, 1889, has no power of eminent domain for that purpose, and is without authority to construct its railway upon and across the canal property so owned by the plaintiff company in fee simple : Com. v. Railroad Co., 27 Pa. 339, 351.

There is in the street railway legislation of Pennsylvania no grant whatever of the right to occupy canal property.

The plaintiff's bridge is not a " street or highway " within the meaning of the said act.

The legislature cannot be supposed to have intended to increase the contractual burden of the plaintiff company.

If the bridge and the contiguous land are to be regarded as portion of the public highway, yet the highway being a suburban road, the defendant's railway would be an additional and unwarranted servitude upon it.

In the case of the Pennsylvania Railroad Company v. Street Railway Company, 176 Pa. 559, 576, Mr. Justice MITCHELL, delivering the opinion of the Supreme Court, said :

" What Penna. R. R. Co. v. Montgomery Co. Ry. Co. really decides and is authority for is that the laying of railway tracks on a suburban road is an additional servitude which cannot be imposed upon the owner of the fee against his will by the mere consent of the township authorities."

The principle thus defined is precisely applicable here, whether

the matter be considered with reference to the bridge alone or considered with reference to the contiguous land over which the bridge is approached.

*Wm. H. Hackenberg* and *R. C. Dale*, with them *James Scarlet*, for appellees.—The appellant purchased this land as a corporation, not as an individual. Its right to it is no higher than if it had taken it under the right of eminent domain under which the state acquired it. The right to take and hold is based on necessity and cannot be broader than the necessity which supports it: Cooley, Const. Lim. (3d ed.) pp. 557, 558; 5 Thompson on Corp. sec. 5791.

The principles which we are contending for are sustained by the very case cited by the appellants, Haldeman v. Pennsylvania Railroad Co., 50 Pa. 425, in construing the acts under which appellants claim title: Com. v. McAlister, 2 Watts, 190.

The distinction becomes one of vast importance when it is considered that a corporation could acquire and hold real estate simply for the purpose of blocking and stopping all such improvements as street railway companies.

The case of Penna. R. R. Co. v. Montgomery Pass. Ry. Co., 167 Pa. 62, relied upon by the appellants, is not in support of their contention. That case was expressly put upon the ground that " the consent of the local authorities of West Conshohocken borough and White Marsh township were refused, that of Upper Merion was given, that of the borough of Conshohocken was given and has since been withdrawn."

Canals like railways are public highways and their owners are not to be considered as the owners of private property.

Penna. Railroad v. Electric Ry., 152 Pa. 116, opinion by STERRETT, J. : " Railroads are public highways. They cannot therefore, for all purposes, be considered private property only. As they possess a public character they are subject to public supervision: " Traction Co. v. Canal Co., 1 Pa. Superior Ct. 409; Traction Co. v. Canal Co., 180 Pa. 636.

The decisions of our Supreme Court are therefore all in accord with the distinction between the ownership of property by a corporation for public purposes and the ownership of property by private individuals.

In the absence of any special obligation by prescription or

legislative enactment, the duty of repairing the bridges falls upon the public, either the county, city or borough where the bridge is erected, provided it be a bridge dedicated to and used by the public: Meadville Boro. v. Canal Co., 18 Pa. 66; Rapho v. Moore, 68 Pa. 404.

In Harrisburg Railway Co. v. Harrisburg, 149 Pa. 465, it is held that the street railway company had the right to cross a bridge over the tracks of a railway company. Why then not cross a canal? As to the plaintiff's bridge not being a highway within the meaning of the act, the decisions are abundantly the other way.

We have shown that it is not and never was the plaintiff's bridge, and it could not by volunteering to build and maintain it, assert rights of ownership. It was a bridge dedicated to public use, subject to supervision and control by the supervisors of the township.

The contention as to the canal company being the owner of the bridge has been shown to be untenable. It is a public road bridge and there is no need in discussing the position taken that the decree of the court is taking any of its property from it. It never had any property rights in it.

The court has found as a fact that the use of the bridge by the railway company in no way interferes with the use and navigation of the canal. No burden is imposed upon the canal company and as a matter of fact it has been relieved of the burden of the maintenance of the bridge. But as to an additional servitude, it is expressly ruled by the Supreme Court in Penna. R. Co. v. Street Ry. Co., 176 Pa. 559, that, " To entitle appellant to question the prima facie right thus appearing, it must show some interest in or damage to itself, different from that of the general public. It has failed to do so. It is not the owner of the bridge, and the crossing over its right of way is upon a public highway to all rightful uses of which its property is subject. . . . In respect to a mere crossing, a railroad is not an abutting land holder to the passenger railway."

OPINION BY ORLADY, J., July 28, 1899:

The defendant is a street railway company, incorporated by letters patent, issued under the provisions of the act of assembly approved May 14, 1889, P. L. 211. Pursuant to its charter, it

secured the consent of municipalities and landowners,—with the exception of the plaintiff,—and constructed a street railway, to be operated by electricity, between Lewisburg and Watsontown, which were the terminal points mentioned in its articles of association.

During the progress of the work, the plaintiff caused the defendant and the contractors having in charge the construction of the railway to be notified, "not to invade, encroach upon, occupy or use the canal bridge No. 101, below the lock No. 18 near Watsontown, Pennsylvania, in the County of Northumberland for passenger railway purposes. The ownership in fee of said canal bridge and the land upon which it is located is vested in the Pennsylvania Canal Company. The owners of said canal bridge and the land . . . . notify you not to interfere with the same or any other property of said Canal Company wherever situate in any manner for passenger railway purposes. They refuse to consent to your occupation of the same and warn you against the expenditure of money in the construction of a passenger railway in the hope that you will be permitted to use the said bridge. If you persist in such occupation you will be resisted in every lawful way." At the time this notice was served, October 29, 1897, the construction had progressed to within two miles of the canal bridge, and the defendants decided to disregard it and to continue the work. On November 26, 1897, a bill in equity, with affidavits and bond was filed by the plaintiff, and a preliminary injunction was awarded. The defendants appeared and filed an answer, but, after hearing, the court refused to continue the injunction, dismissed the bill at the cost of the plaintiff, and entered the following decree : "It is ordered and decreed that the defendant be permitted to cross the canal property of the plaintiff upon the public highway and overhead bridge now in use by the general public. It is further ordered that before doing so the defendant so strengthen the said bridge as to make it sufficiently strong to carry its cars with entire safety. That this be done without expense to plaintiff and in such a way as not to interfere with the use of its canal. That hereafter the defendant shall maintain said bridge, in a safe and serviceable condition, both for its own use and the use of the general public, at its own proper cost and expense," from which the plaintiff appealed. The real and only question in the case

is whether the Pennsylvania Canal Company is such an owner of land, as to make its consent necessary before the street railway company could cross the canal over the bridge.

The learned court below specially found that "the plaintiff is the owner in fee, of the land occupied by it, and the same is used for canal purposes only."

The land in controversy was owned by one John Watson, when by virtue of certain acts of general assembly, passed in 1824, 1825, 1826, 1827, 1828, the commonwealth of Pennsylvania, commenced and completed a system of canals in the state, including one along the west branch of the Susquehanna river, which passed through the land owned by John Watson, and about seven and one half acres were taken by the state. The damages claimed by John Watson were paid by the commonwealth, and releases and receipts for the purchase money were given by John Watson and after his death by his heirs at law. Under the Act of April 21, 1858, P. L. 414, entitled "An act for the sale of the state canals," the public works of the commonwealth were sold and a portion consisting, inter alia, of the branch of the canal under consideration, was sold to the Sunbury & Erie Railroad Company. By section 4 of this act—upon compliance with the conditions mentioned which were subsequently performed—the governor of the state was directed to "under the great seal of the commonwealth, transfer and deliver to the Sunbury & Erie Railroad Company, their successors and assigns forever, all of the said works mentioned in the first section of the act, with the appurtenances, and all the right, title and interest, property, claim and demand whatsoever of the commonwealth of Pennsylvania, of, in and to the same, and every part thereof."

Section five provided that the said company, their successors and assigns, shall hold, possess, use and enjoy the said property, free and discharged from all incumbrances, except as provided in the act, "and shall have authority to grant, sell and convey, or to lease for a term of years, the whole or any part of said property to any corporation of this state or to any association of individuals; and their grantees shall hold and enjoy the same, together with all the rights, privileges and franchises granted by the act to the purchaser," and that the purchaser "shall be bound to keep up the same, including public and

private bridges crossing the said canal, as heretofore done by the canal commissioners in as good repair and operating condition as they now are; and they shall be and remain public highways forever, for the use and enjoyment of all persons desiring to use the same, subject to such rules and regulations as the owners thereof may from time to time establish."

The title thus derived is now in the plaintiff in this action.

The evidence shows that a public road was located through the Watson land before the canal was constructed, and that it was carried over the canal by a bridge which was already constructed or was then erected by the state, and has since been maintained by the owners of the canal.

The bridge was raised above the canal, and a strip of land twenty-five feet in width on one side of the canal and a similar strip forty-seven feet in width on the other side of the canal, and each being of a greater width than the public road so that there was land on each side of the public road and which was exclusive of the canal water way, was condemned and paid for by the commonwealth and has been used for the purposes of the canal company and to make and maintain the proper approaches to the raised bridge. Independent of the other question raised, the canal company is an abutting owner as to the land within these lines.

In Wyoming Coal and Transfer Company v. Price, 81 Pa. 156, after reviewing Haldeman v. Penna. R. Co., 50 Pa. 425, 431; Craig v. Mayor of Allegheny, 53 Pa. 477; Robinson v. West Penna. R. Co., 72 Pa. 316; Union Canal Co. v. Young, 1 Whart. 410, our Supreme Court held that "It must, therefore, now be declared as the settled law of this state, that whenever the commonwealth took land for permanent use under the acts in question, and constructed and operated a canal thereon, she acquired an estate in the lands so taken in perpetuity, and she may dispose of the same in fee."

In 1857 the Pennsylvania Railroad Company purchased from the commonwealth a canal which had been known as the "Juniata division," which had been constructed under similar authority to the one owned by the plaintiff, and afterwards conveyed it to the Pennsylvania Canal Company, which last named company reconveyed it to the railroad company in 1889. As to the title of the railroad company the Supreme Court in

Smucker v. Penna. R. Co., 188 Pa. 40, said: " Unquestionably, this put in the railroad company the entire right of the commonwealth, which, it is settled by numerous decisions, was not a mere right of way, but a fee in the land appropriated."

This statement of the extent of the title of the railroad company was not made to depend upon an authorized abandonment of that part of the canal, by an act of the legislature, and it was not deemed essential to the decision, as the learned judge who wrote the opinion was for many years the president judge of the courts of Huntingdon and Blair counties, through which the canal passed, and where it had been a fruitful source of litigation both before and subsequent to its abandonment.

Conveyances to railroad, land and water companies, and for a special use, as for instance for a depot, for a rail or tramway, for a canal or raceway, and of minerals and ores . . . . are always regarded as conveyances of estates in lands; and if the words of conveyance are adapted to convey a fee, the estate granted will be a fee, though the grantee is restricted in the use of the estate conveyed: Fitzgerald v. Faunce, 46 N. J. L. 536. See also United States Pipe Line Co. v. Delaware, L. & W. R. Co., 42 L. R. A. 572.

Hence the plaintiff's case is to be considered as if the corporation were an individual owner. The canal of the appellant is being operated as such. It is conceded that its title in the land is as large as a corporation can hold, but it is denied that it is such an entire and unrestricted estate as a natural person may hold, in that it is limited, though in perpetuity, for the purpose of the corporation's creation.

The bridge and adjacent land are conformed and adjusted to meet the requirement to keep up bridges, " as heretofore done by the canal commissioners." As maintained it serves the double purpose,—a substitute for a bisected public road, and for the use of the canal proper, freed from the right of highway over its route. To conserve both purposes, the canal company was charged with a proper maintenance of the structure; it had full power to raise or lower it, and it could not be changed or interfered with by the local authorities. It is the owner of the bridge by the same title that it owns the water way beneath it.

Under the decree as made, the canal company is driven from the bridge and land covered by the approaches, and from its

right to decide what is proper maintenance of the structure "so as not to interfere with the use of the canal." The use to which the bridge is subjected is entirely different from the one for which it was originally constructed, or has been maintained. The change is at the cost of the railroad company, but the control of the true owner is taken away, and in its stead is substituted the judgment and dominion of the railroad company. If the condition that the canal "shall be and remain a public highway forever" should be removed by the legislature, as has been done in regard to a number of similar canals in the state, or, if, by legal proceedings, the public road should be vacated, the whole property would be relieved from the condition and charge; which contingencies should be considered before there is imposed upon the land and bridge a permanent additional servitude. It has the right to defend its title that it may not only use its lands for the purposes of the corporation's creation, but "grant, sell and convey, or, to lease for a term of years, the whole or any part of said property to any corporation of this state or to any association of individuals " hence the value might be seriously affected if the property is charged with such permanent servitudes as to destroy the reversionary interest.

There is nothing in the act of 1889, under which the defendant acquired its charter, which authorizes it to cross a canal; and to sustain the decree we must expunge from the case every right of the canal company to the bridge, which it has maintained, and consider the land and bridge simply as a public road over which the local authorities would have entire control, giving them the right to impose this servitude. They have never asserted any right of control over the bridge since it was erected in 1831, and do not have the authority now to justify the railroad company in taking that which does not wholly belong to the public. The canal company has a property right in the land and bridge which cannot be taken or appropriated by the railroad company, as it does not have the right of eminent domain: Penna. R. Co. v. Montgomery Co., 167 Pa. 62; Penna. R. Co. v. Street Railway Co., 176 Pa. 559, 576. The state was not a mere volunteer in building or maintaining the bridge. If the bridge was a part of the public road when the land was condemned, it was the duty of the state to preserve the integrity of the highway and not to destroy it; and if it bisected the

roadway, it was its duty to supply—with a bridge or its equivalent—what it had appropriated. The canal is a public highway in the same sense that a railroad is one. "They cannot therefore for all purposes be considered private property only. As they possess a public character as well they are subject to public supervision:" Penna. R. Co. v. Electric Ry., 152 Pa. 116. Every legislative grant is made with the implied reservation that it shall not injure others: Commonwealth v. Penna. Canal Co., 66 Pa. 41. The land contiguous to the bridge and that covered by it are held by the plaintiff by a fee simple title as decided by the Supreme Court and the canal company had the undoubted right to withhold its consent.

The plaintiff moved promptly, and when the railroad company was at work two miles distant from the property in controversy it received a positive notice that its occupation of the premises would be resisted in every lawful way, and it was warned against the expenditure of money in the construction of the railway. It elected to act in defiance of this warning, and it has not acquired any equity through the expenditure of money, after the notice was given, to entitle it to relief now. As was said in Heilman et al. v. Railway Company, 180 Pa. 627, "the question in each case must depend upon the circumstances out of which it grows, and requires the exercise of judgment in determining the equities involved. At present an action at law is the only remedy within the reach of an injured person who has suffered a railway to be built across his land without objection; but equity will interpose to protect him if he comes in proper time, by enjoining the construction until his damages have been paid or secured to his satisfaction:" Penna. R. Co. v. Montgomery County Passenger Railway, 167 Pa. 62. The present injury to the appellant may be slight, and the railway doubtless is a convenience to the public, but the invasion of the appellant's property was without right, and the injury to the appellant in having fixed upon it for all time the rights given by the decree of the court below to the railway company is very difficult of computation, so that the remedy at law is an inadequate one. The object of the preliminary injunction is to preserve the subject of the controversy in the condition in which it is until the merits can be heard. It cannot be used to take

property out of the possession of one party and put it in the possession of another: Fredericks v. Huber, 180 Pa. 572.

The first, second and third assignments of error are sustained and it is not necessary to consider the fourth. The decree refusing the injunction, dismissing the bill in equity at the plaintiff's cost, permitting the defendant to cross the canal property of the plaintiff and directing the manner of use of the bridge and maintenance thereof by the defendant is reversed. It is now ordered that the Lewisburg, Milton and Watsontown Passenger Railway Company, its officers, agents, servants and successors be and hereby are perpetually enjoined from occupying or using the property of the Pennsylvania Canal Company, described in the bill, answer and decree of the court below, for railway purposes, the appellee to pay the costs.