# Pennsylvania Railroad Company, Appellant, *v.* Inland Traction Company.

*Street railways—Railroads—Railroad company as abutting owner—Turnpike road—Equity—Doubtful right.*

Ownership in fee of the bed of its railroad where the same crosses a public highway does not put a railroad company in precisely the same position with reference to the right of a street railway company to lay its tracks upon the highway that its vendor would have held, if he had not parted

with his title, but by reason of the provisions of section 18 of the Act of May 14, 1889, P. L. 219, as the latter is qualified by the provisions of sec. 2, of the Act of 1871, P. L. 1360, the railroad company holds subject to the lawful uses of the highway, and amongst them its use for the passage of the cars of a street railway company, provided of course, that the latter is otherwise fully entitled so to do. This proposition is applicable to all the land which in a legal sense constitutes the roadway, or it is commonly called, "the right of way" of the railroad company at the point where it crosses the highway; but unless the lands of the railroad company held in fee can fairly be said to be a part of its roadway, where it crosses a highway, the right of the owner, though a railroad corporation, as against the asserted right of a street railway company to lay its tracks upon a suburban road, is as perfect as that of a private individual. If it is doubtful whether the land owned in fee is, or is not a constitutent part of the roadway or right of way, the court will not restrain a street railway company from laying its tracks on the turnpike on which the land abuts, and extending them on the turnpike across the railroad's right of way.

Argued Dec. 8, 1903. Appeal, No. 193, Oct. T., 1902, by plaintiff, from decree of C. P. Montgomery Co., March T., 1903, No. 7, dismissing bill in equity in case of Pennsylvania Railroad Company v. Inland Traction Company and the Philadelphia & Lehigh Valley Traction Company. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Bill in equity for an injunction.

WEAND, J., filed the following opinion:

The bill avers that the plaintiff owns in fee simple certain land in Whitemarsh township, Montgomery county, subject to certain public roads known as the Chestnut Hill and Springhouse and Skippack turnpikes running through it and over which plaintiff has constructed a branch railroad. To cross said road plaintiff has constructed an iron bridge for the passage of its cars.

The complaint is that defendants are about to construct their street railway along and over said turnpike roads where the same cross the said land owned by plaintiff. In doing so they pass on the public road and land of plaintiff before and after running under the bridge spanning the turnpike.

It was agreed that the case should be heard as on final hearing. The contention of plaintiff is (1) that being the owner

in fee of the land abutting on the public highway its consent to the occupation of the highway by the defendants is necessary; (2) that the act of May 15, 1895, conferred no power upon the Philadelphia & Lehigh Traction Company by reason of the consolidation of other roads to occupy township or country roads.

### FINDINGS OF FACT.

1. The plaintiff is a corporation duly chartered and operating its main line of railroad from Philadelphia to Pittsburg and has constructed and now operates a branch railroad leading from its main line at Glen Lock, in Chester county, through the county of Montgomery to the county line between the counties of Montgomery and Bucks, known as the Trenton Cut-Off.

2. By certain conveyance dated respectively August 2, 1893, recorded in deed book 387, page 60, and April 17, 1890, recorded in deed book 344, page 490, the plaintiff company became the owner of the premises described in page 4 of their bill. The premises are situate on opposite sides of the Chestnut Hill and Springhouse Turnpike road, and abut thereon, the tract on the east side containing in front or breadth along the side of the turnpike 168 feet, and the other on the west side of the turnpike $203\frac{2}{10}$ feet.

3. The Trenton Cut-Off road passes over said turnpike by means of an iron bridge.

4. The defendant, the Inland Traction Company, was a corporation created under the laws of Pennsylvania. Its route as covered by its charter extended from a point in the borough of Perkasie in Bucks county to a point in the borough of Lansdale in Montgomery county. The charter was granted under date of October 14, 1898.

5. Under date of July 22, 1899, this company extended its line from the terminus of the chartered road in Lansdale to the dividing line between the county of Montgomery and the county of Philadelphia, at Chestnut Hill park in Springfield township, Montgomery county. These extensions were duly recorded in the office for recording of deeds, etc., at Norristown in Misc. Book, No. 46, p. 148, and transcript thereof filed in due time with the secretary of the commonwealth at Harrisburg.

6. The said company by further resolutions "had on January 16, 1901, extended its lines from the northern terminus at Perkasie in Bucks county to the southern limits of the borough of Coopersburg in Upper Saucon township, Lehigh county, at a point which was the southern terminus of the street railway of the Allentown & Coopersburg Street Railway Company."

7. The Allentown and Coopersburg Street Railway Company is a corporation created under the laws of the state, being chartered under the street railway act of May 14, 1889, to construct a road from a point on the line of the Lehigh Valley Traction Company's road at Mountainville, Salisbury township, Lehigh county, through the townships of Salisbury and Upper Saucon, Lehigh county, through the borough of Coopersburg said county to the southern terminus thereof at a point which is the northern terminus of the last mentioned extended lines of the Inland Traction Company.

8. The above railway companies entered into the contract of consolidation and merger under date of February 14, 1901, whereby the Allentown and Coopersburg Company was merged into and consolidated with the Inland Traction, the new company being named the Philadelphia and Lehigh Valley Traction Company. This contract was duly recorded in the county of Lehigh at Allentown in Misc. Book, vol. 38, p. 69, at Norristown, Montgomery county, in Misc. Book, No. 49, 293, and at Doylestown, Bucks county, in Book 32, p. 351, and filed with the secretary of the commonwealth at Harrisburg.

9. The defendant is constructing its road upon the turnpike of the Chestnut Hill and Springhouse Turnpike Company and also upon the turnpike road of the Skippack Turnpike Road Company at the point where it conjoins with the first named turnpike company having the consent of said companies to occupy their road.

10. The plaintiff claims to be the owner in fee of land upon both sides of said turnpike road thus about to be occupied by the defendant company, and have not given their consent to the occupation of said public road by the defendant company.

11. The defendants have the consent of all the municipalities through which its road is proposed to be constructed and

also as far as this proceeding shows of all landowners except plaintiffs in litigation with Philadelphia and Reading Railroad.

12. The defendants have practically completed their road except at railroad crossings and have expended $2,000,000 in so doing.

13. The land owned by plaintiffs at the point in dispute is held for railroad purposes and is principally, if not entirely, available only for such purposes.

### CONCLUSIONS OF LAW.

The defendant company has practically completed its line of railway running through the counties of Lehigh, Bucks and Montgomery to the line of·Philadelphia and passes through a number of thriving boroughs and villages. All those municipalities and the owners of adjoining land have given their consent to the construction of the railway except the Philadelphia & Reading and the Pennsylvania Railroad and the Manor Real Estate Company in which case litigation is pending. It is therefore evident that if the public interests are to be considered, a court of equity should not interfere unless in a clear case where private or corporate rights are invaded. Individual opposition to street railways is now seldom shown, but opposition from steam roads will continue for manifest reasons. A steam road can with great propriety object to grade crossings because of the danger attending such crossings, but a court should be slow to prevent the wishes of a large community where no considerable damage can be done to a complaining rival corporation from the mere occupation of a public road in front of its property and not crossing a steam road at grade. It is our opinion that the plaintiffs as owners of the land in dispute have only a right of way for the purposes of its railroad. The original conveyance to Mr. Wilson, his conveyance of part to the Real Estate Company, the conveyance of the remainder to the plaintiff, its condition, location, manner of use, freedom from taxation, and all the peculiar circumstances of the case conclusively show this fact. In case of seizure upon execution, how could it be separated, or in what manner could a distinction be drawn between its parts ?

The part not occupied absolutely was necessary for the en-

joyment of that part used for the superstructure erected for fills, embankments, siding, etc., and as no separation or division of it has been made, the part not immediately connected with the rest as to be a constituent part of that actually occupied by the plaintiff company at the crossing. We are unable to find, therefore, as claimed by counsel, that plaintiff stands in the same position as a private individual, whose consent must first be obtained.

Conceding that the laying of railway tracks on a suburban road is an additional servitude which cannot be imposed upon the owner of the fee against his will by the mere consent of the township authorities, it must also be conceded that in respect to a mere crossing a railroad company is not an abutting landowner to a passenger railway· (Penna. Company v. The Greenburg, etc., Railway Co., 176 Pa. 559), and what is this but a mere crossing of the right of way except that the right of way included land on either side of the tracks of plaintiff company. If the principle here contended for by the plaintiff is correct, then even if the additional land was only a few feet in extent the same result would follow and this lead to an absurdity. The lay of the ground, its necessity to secure the crossing by the bridge, all show that it is part of the " right of way " under which term certainly is included more land than that actually occupied by the tracks, and the testimony of plaintiffs would imply that it may be necessary to be used for more tracks.

We are met by the case of the Penna. R. R. v. Montgomery County Passenger Railway, 167 Pa. 62, as authority for plaintiff's contention. The point of contention in that case in the court below was that the railway company had not obtained the consent of all the municipalities through which it was authorized to construct its road, and that the company's charter under the act of May 14, 1889, was confined to streets properly and strictly so-called. In that case the master found as a conclusion of law that the defendant company had no right to begin a construction of its road until it had obtained the consent of all the municipalities through which the road was to be built. The Supreme Court sustained this conclusion and also held that the consent of abutting property owners was necessary. A careful examination of the case will show that the point was not made that " in respect to a mere crossing, a rail-

road company is not an abutting landowner to a passenger railway." The Pennsylvania Railroad Company was treated as an individual owner, and of course, as such, had the rights of an individual, but it is plain that the railway company would have been restrained had all the municipalities consented. In Northern Central Railway Co. v. Harrisburg and Mechanicsburg Electric Railway Co. et al., 177 Pa. 142, it was held " that under the act of May 14, 1889, a street railway company has no right to construct, etc., its road across the lines of a steam railroad company without the consent and against the protest of the latter at a point where its roadway is not crossed by a public highway." In that case the attempt to cross was not on the highway but at a different place, which is not the fact here, for the crossings under the bridge by defendant company is on the public highway and the land of plaintiff is the approach of the bridge, but the whole length of the ground is as much the point of crossing as is the bridge or the ground beneath it.

Canal Co. v. Railway Co., 10 Pa. Superior Ct. 413, is not in point. There the railroad company was the owner in fee of the canal bridge which it was proposed to cross.

In Trenton Cut-Off R. R. Co. v. Newtown Electric Railway Company, 8 Pa. Dist. Rep. 549, Judge YERKES, in an opinion which is certainly deserving of great consideration, after reviewing numerous authorities, held that the defendant company was confined to the point of crossing but could not go beyond the mere crossing without consent. As a principle of law we can find no fault with his decision. It is in line with Northern Central Ry. Co. v. Harrisburg and Mechanicsburg Electric Ry. Co., supra, but we differ as to what constitutes "the point of crossing." If it is immediately at the tracks of the railroad company then his decision is correct, but we contend that in this case the plaintiff's road along the highway is an entirety and as much a part of the crossing as that on which the tracks are laid or the bridge built. To hold otherwise would be to say that the plaintiff company can draw an imaginary line and say, " this is our right of way or crossing, but the part cut off is sacred ground."

If we suppose that the defendant company had proposed at this point to cross the railroad at grade and had been met with an objection that an overhead crossing was reasonably prac-

ticable would not the court have power to direct such overhead crossing and thereby necessitate the approach at a point distant from the crossing and opposite plaintiff's land or suppose that plaintiff's ownership, no matter how acquired, extended only a few yards beyond the immediate point of crossing, could it be claimed with any show of reason, justice or equity that this space should prevent defendant from occupying it, to effect a crossing?

Equity looks at the reason and justice of the matter under the peculiar circumstances of the case and an injunction will not be granted where great public interests are concerned and where no material right of the plaintiff is invaded except in a clear invasion of right.

The constitution of the commonwealth provides that "No incorporated company, doing the business of a common carrier, shall either directly or indirectly hold or acquire lands, freehold, or leasehold, except such as shall be necessary for carrying on its business."

It could only have acquired the land for the lawful purposes of a railroad. It is plain from the testimony that it was all acquired by reason of the necessity of building a bridge over the turnpike. It is one essential part of the crossing no matter what its extent, and we are not running counter to the spirit or true meaning of any decision of the Supreme Court or Superior Court in holding that the plaintiff's consent is not necessary, there being no appropriation of any of plaintiff's land to the exclusive use of defendant company.

There is no alternative prayer, that if the court should find that the company had a right to build its railway, an injunction should restrain it from building until compensation was secured.

The averment in section 8 of plaintiff's bill that the merger and consolidation of the Allentown and Coopersburg Street Railway Company and the Inland Traction Company is not within the meaning of the act of May 15, 1895, cannot be sustained. The merger and consolidation was not under that act and is not a case of sale or leasing of street railways to traction or motor power company. The consolidation was under the Act of May 16, 1861, P. L. 702, relating to railroad companies and in Hestonville, Mantua and Fairmount Company v. City

of Philadelphia, 89 Pa. 210, it was held that " City Passenger Railways are included within the term ' railroads ' employed in the act of May 16, 1861, and the provisions of said act relating to merger, apply to said railway " and affirmed in the Borough of Millvale v. Evergreen Railway Co., 131 Pa. 1 ; Gyger v. Phila., etc., Ry. Co. et al., 136 Pa. 96, and Old Colony Trust Company v. Transit Company, 192 Pa. 596.

Although the defendant company's road has been but recently built, we can say of it as was said by Judge McPHERSON in Becker v. The Lebanon & Myerstown Street Railway Co., 188 Pa. 484 : " The community through which the railway passes is thickly settled, the travel is considerable and the convenience of the public is largely promoted by the existence of this means of travel. The service has been continuously maintained, has grown accustomed to its convenience and comfort. It has become an important means of transportation for the public along its lines, and for the town which it connects. The interruption of its traffic would inflict great inconvenience upon the public and a serious loss upon the company." All of which applies to defendant road so far as already constructed and in operation. When we consider the loss to the public and the defendant by an interruption such as is prayed for without any advantage to plaintiff by an injunction or disadvantage by refusing it, we are under the facts of the case bound to deny the application.

### DECREE.

And now, July 15, 1902, this case having been heard and argued by counsel on final hearing it is now ordered and decreed, that unless exceptions be filed within the time allowed by the equity rules, the injunction will be dissolved and the bill dismissed at costs of plaintiff.

The court entered a decree dismissing the bill.

*Error assigned* was the decree of the court.

*Cyrus G. Derr*, with him *C. Henry Stinson*, for appellant.— A street railway upon a township road involves the imposition of an additional servitude, and its construction is unlawful if the consent thereto of the owner of the property on which the

turnpike road is located be not first obtained: Penna. R. R. Co. v. Montg. Co. Pass. Ry. Co., 167 Pa. 62.

The case of Pennyslvania Canal Company v. Lewisburg, Milton & Watsontown Passenger Railway Company, 10 Pa. Superior Ct. 413, was precisely like that here considered.

*N. H. Larzelere* and *R. E. Wright,* for appellee.—In respect to a mere crossing, a railroad company is not an abutting landowner to a passenger railway: Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., 167 Pa. 62; Williams Val. R. R. Co. v. Lykens & Williams Valley St. Ry. Co., 192 Pa. 552.

We respectively submit (if necessary to the purposes of this case) that as to the use of public highways and especially as to turnpike roads, street railway companies under the acts of 1889 and 1901 possess the power of eminent domain.

An injunction is not of right. It will not be issued when upon broad consideration of the situation of all the parties in interest, good conscience does not require it: Messner v. Ry. Co., 13 Pa. Superior Ct. 429; Penna. R. R. Co. v. Glenwood, etc., Electric St. Ry. Co., 184 Pa. 227; Becker v. Lebanon, etc., St. Ry. Co., 188 Pa. 424.

OPINION BY RICE, P. J., May 10, 1904:

The Chestnut Hill and Spring House turnpike runs nearly north and south at the point where it is crossed by an iron bridge constructed by the plaintiff for the passage of its cars. At the time this bill was filled the defendant had practically completed its street railway except at railroad crossings and was about to lay its track on the turnpike underneath the bridge. The line of the street railway is west of the center line of the turnpike and crosses a lot—that part which is in the bed of the turnpike—which was conveyed by James Otterson to the plaintiff by deed in fee simple dated April 17, 1890. The deed calls for the center line of the turnpike as one of the boundaries. The lot contains a little over two acres and has a frontage on the turnpike of about two hundred feet. Running nearly east and west through the center of this lot the plaintiff company has a stone viaduct, a little over twenty-seven feet in width, which, as we understand the testimony, is a continuation of the iron bridge that crosses the turnpike. At the

western end of the viaduct the plaintiff has an embankment or fill which occupies in width a much larger part of the lot but not all of it. It is thus seen that on either side of the bridge, viaduct and embankment upon which the plaintiff's tracks are laid there are strips of land of varying width that will be crossed by the street railway and that are not now physically occupied by the plaintiff's tracks or either of these structures. But the court has found upon sufficient evidence as follows: " The land owned by the plaintiff at the point in dispute is held for railroad purposes and is principally, if not entirely, available only for such purposes." This finding of fact is amplified and explained later in the opinion as follows: " The lay of the ground, its necessity to secure a crossing by the bridge that is part of the 'right of way,' under which term certainly is included more land than that actually occupied by the tracks, and the testimony of the plaintiff would imply that it may be necessary to be used for more tracks." Again, speaking of the power of the plaintiff company, the learned judge says that it could only have acquired the land for the lawful purposes of a railroad, and that it is plain from the testimony that it was all acquired by reason of the necessity of building a bridge over the turnpike. From the foregoing and other facts set forth in his opinion he draws the conclusion that it is " an essential part of the crossing no matter what its extent," and therefore it was not necessary for the defendant to obtain the plaintiff's consent to the laying of the street railway tracks on the turnpike in the manner above described.

In view of the decision in North Penna. R. R. Co. v. Inland Traction Co., 205 Pa. 579, which we shall more fully consider hereafter, we have not deemed it necessary to recite the facts relative to the plaintiff's ownership and occupancy of the lot on the east side of the turnpike. They are fully set forth in Judge WEAND's opinion, and it is enough for us to say that none of them tends to weaken the foregoing findings and conclusions, but, taken as a whole, they tend rather to strengthen them.

A railroad company has a right to consider the needs of the future and to construct its road and make its plans with reference to those future needs: Pittsburg Junction R. R. Company's Appeal, 122 Pa. 511; Pittburg, Ft. Wayne and

Chicago Ry. Co. v. Peet, 152 Pa. 488. In the absence of any prohibitory statute, such corporation may take by purchase and hold, in fee simple, such land as may be necessary for its purposes, and section 2 of the Act of April 13, 1846, P. L. 312, expressly conferred upon the plaintiff the power " to purchase, receive, have, hold, use, and enjoy to them and their successors, lands, tenements, and hereditaments," etc. Therefore, and especially in view of the foregoing findings of fact, there is no warrant for doubting the power of the plaintiff to acquire and hold the whole of the Otterson lot in fee, even if it were competent for any one but the representative of the commonwealth to raise that question in this collateral way.

The propositions, that street railway companies incorporated under the act of 1889 have not the general and unrestricted power of eminent domain, and that the laying of street railway tracks on a suburban road is an additional servitude, which cannot be imposed upon the owner of a fee against his will by mere consent of the township, were definitely decided in Pennsylvania R. R. Co. v. Montgomery County Passenger Railway, 167 Pa. 62, and the group of cases reported in the same volume, and have been reaffirmed in many subsequent cases. The argument of defendant's counsel in their original paper-book in support of the proposition that the power of eminent domain given by the 17th section of the act is not confined to the interest of the turnpike company in the road but includes also the interests of abutting owners whose titles extend to the center of the turnpike has been conclusively answered in Hinnershitz v. United Traction Company, 206 Pa. 91, decided since the argument was prepared. It was there held that the view taken by counsel " would establish a distinction between turnpikes and ordinary highways as to the rights of abutting landowners, giving the power of eminent domain in one case and not in the other, a distinction for which there is no warrant in the act."

But the 18th section of the act gives in express terms to street railway companies the right " to cross at grade, diagonally or transversely, any railroad operated by steam or otherwise." This right is subject, however, to the jurisdiction of courts of equity, conferred by the act of 1871, " to ascertain and define by their decree the mode of such crossing

which will inflict the least practical injury upon the rights of the company owning the railroad which is intended to be crossed," Pennsylvania R. R. Company v. Braddock Electric Ry. Company, 152 Pa. 116, and is not exercisable at all, without consent of the railroad company, at points other than upon a public highway: Northern Central Railroad Company v. Harrisburg, etc., Ry. Company, 177 Pa. 142; Cumberland Valley R. R. Co. v. Harrisburg, etc., Ry. Co., 177 Pa. 155. In the former case an overhead crossing, and in the latter a crossing underneath the superstructure on which the tracks of the railroad company rested, was held on appeal to be unwarranted by the act of 1889 and was enjoined. Speaking of section 18 Chief Justice STERRETT said that the authority therein granted is necessarily applicable only to crossings at points where the railroad is crossed by a street or highway. "In other words, it refers only to a crossing at a point where a street or high-way, on which the street railway is located, crosses a steam railroad. To hold otherwise would not only be contrary to the manifest intention of the legislature but it would involve the constitutionality of the 18th section." This language, indeed the tenor of the opinion as a whole, forbids the inference that the court intended to overrule or qualify what was said on this point in Pennsylvania R. R. Co. v. Greensburg, etc., Ry. Co., 176 Pa. 559, which was decided less than three months before. In that case the right of a street railway company to cross at grade two side or branch tracks of a railroad which intersected a borough street, and to cross the main line by a bridge spanning the same which formed part of another street, was sustained. Commenting on Pennsylvania R. R. Co. v. Montgomery County Ry. Co., 167 Pa. 62, Justice MITCHELL said that what this case " really decides and is authority for is first that the laying of railway tracks on a suburban road is an additional servitude which cannot be imposed upon the owner of the fee against his will by the mere consent of the township authorities; and secondly that the franchise of a street railway passing through several localities is an entirety and the necessary local or municipal consent for the whole route must be obtained, before it has a right to build any part." Coming then to the question whether the railroad company was in a position to question the right of street railway companies to

construct and operate railways along the routes or portions of routes in controversy, he further said : " The charter covers the route upon which the road is built, and the learned judge below has found that the appellee has the consent of the local authorities, of all the owners of property along the roads occupied and of those through whose property its line passes. To entitle appellant to question the prima facie right thus appearing it must show some interest in, or damage to itself, different from that of the general public. It has failed to do so. It is not the owner of the bridge, and the crossing over its right of way is upon a public highway, to all the rightful uses of which its property is subject. The bridge is part of the highway, and the consent of the borough authorities for the laying of the rails must be as effective on it as on any other part, or the borough would hold its municipal power to consent only in subordination to the will of every railroad which the highway happened to cross. The 18th section of the act of 1889 gives in express terms the right to cross railroads at grade, and a fortiori to cross overhead. In respect to a mere crossing, a railroad is not an abutting landholder to the passenger railway, as the plaintiff was in Penna. R. R. Co. v. Montgomery County Ry. Co., supra." The case is distinguishable from the present in two particulars, first, the highways involved were borough streets—see Dempster v. United Traction Company, 205 Pa. 70—second it, does not appear that the railroad company owned its roadway in fee. Therefore it cannot be said to rule our case, but the concluding sentence above quoted is significant. In Williams Valley R. R. Co. v. Lykens, etc., Street Ry. Co., 192 Pa. 552, the street railway company proposed to cross the railroad diagonally at grade at a point where the latter crossed the township road. Judge SIMONTON found as a fact that the railroad company was the owner in fee of its right of way where it crossed the highway but was not the owner of any land at this point except the right of way, and held as matter of law—citing the preceding case—that this of itself did not give it the right to prevent a street railway company from crossing its road at grade. Upon appeal the decree permitting this manner of crossing was reversed upon the ground that it was reasonably practicable to avoid a grade crossing. But upon the point now

under consideration Justice DEAN, speaking for the Supreme Court, said: "As to the first question, the court below was clearly right in holding that the ownership of the land in fee by appellant, under the peculiar facts shown, whereon rested its superstructure, gave it no right to exclude subsequent grantees of the commonwealth from the use of the highway or public road which crossed it." In the very recent case of North Pennsylvania R. R. Co. v. Inland Traction Co., 205 Pa. 579, it appeared that the plaintiff's railroad crossed the turnpike through a deep cut which was spanned by a bridge forming part of the highway and that the plaintiff was the owner in fee of the bed of its railroad at that point and also of several pieces of land abutting on the east side of the turnpike, but, except where the railroad crossed the turnpike, its fee extended no farther than to the center of the turnpike. But there, as here, the proposed line of the street railway was to the west of the center line of the turnpike. As to the right of the railroad company growing out of its ownership in fee of the pieces of land on the east side of the turnpike Justice BROWN said: "No additional servitude has been imposed upon their land, which extends only to the middle of the highway. The route of the appellee along the turnpike is over the lands of others, who have consented to its location there. In the case of the occupation of a township road, maintained by supervisors, the rule goes no further than that while an·injunction, if applied for in time, will issue at the instance of an abutting owner, to protect his own land from an additional burden on it, it is none of his concern that his neighbors on the opposite side of the road consent to the use of their lands by a passenger railway company, so long as, from such use, no injury results to him. The protection by injunction to which each landowner is entitled is confined to his own property." As to the rights of the railroad company growing out of the ownership in fee of the land where its railroads crosses the turnpike he said: "Though the appellants are landowners on each side of the turnpike where their railway crosses it, they are not at that point abutting landowners, having a right to complain of the appellee's imposition of an additional servitude upon their land. The crossing of the turnpike by their tracks made the bridging of a deep cut necessary, and the bridge became a part of the high-

way, but the railroad company is not, at that crossing, ' an abutting landowner to the passenger railway, as the plaintiff was in Penna. R. R. Co. v. Montgomery County Pass. Ry. Co., supra;' Penna. R. R. Co. v. Greensburg, etc., Street Ry. Co., 176 Pa. 559."

It is fairly deducible from these cases that ownership in fee of the bed of its railroad, where the same crosses a public highway, does not put a railroad company in precisely the same position with reference to the right of a street railway company to lay its tracks upon the highway that its vendor would have held if he had not parted with his title, but that, by reason of the provisions of section 18 of the act of 1889—as the latter is qualified by the provisions of section 2 of the act of 1871— the railroad company holds subject to the lawful uses of the highway, and amongst them its use for the passage of the cars of a street railway company over the route authorized by its charter, provided of course, that the latter is otherwise fully entitled so to do. If we are correct in drawing the foregoing conclusion, the case at bar is plainly distinguishable from Penna. Canal Co. v. Lewisburg, etc., Passenger Ry. Co., 10 Pa. Superior Ct. 413; nor would it be reasonable to hold that the right of a street railway company, thus recognized, is restricted to the soil lying directly underneath the ties and rails of the railroad company. If the proposition is maintainable at all, as under the foregoing decisions it would seem to be, it is applicable to all the land which in a legal sense constitutes the roadway, or as it is commonly called "the right of way," of the railroad company at the point where it crosses the highway.

But to cross a railroad and to cross the lands of a railroad company are not convertible terms. Unless the lands of a railroad company held in fee can fairly be said to be a part of its roadway where it crosses a highway the right of the owner, though a railroad corporation, as against the asserted right of a street railway company to lay its tracks upon a suburban road, is as perfect as that of a private individual. The decisions leave no room for doubt upon that question.

The question then arises whether all that portion of the Otterson lot lying within the lines of the turnpike may properly be deemed to be a part of the crossing of the Pennsylvania railroad within the meaning of section 18 of the act of 1889

and of the decisions above cited. The case, so far as the defendant's legal right is concerned, turns upon this question; for it is clear that if the strips of land lying on either side of the plaintiff's bridge, viaduct and embankment and extending to the center of the turnpike may not be so designated, the street railway company has no legal right to lay its tracks upon that portion of the turnpike without the plaintiff's consent. And this is true, no matter how advantageous it might be to the public, or to the street railway company, for the latter to have that privilege. It must be conceded that under the evidence the question above stated is not free from difficulty. But it is to be observed that the presumption, which is in accordance with the actual facts of the case, is, that the land was acquired and is held for railroad purposes, that in the acquisition of land for such purposes by deed the company was not restricted to sixty-six feet, that the company is not in a position to assert, and does not assert, that it acquired more land than was required for its present or contemplated needs, and that there is no clear proof that it had any other purpose in view than to make suitable provision for its roadway, or that the land has been devoted to any other railroad purpose. While the company's title to the Otterson lot extends to the center of the turnpike, and is clear and free from doubt, the majority of us are of opinion that its right to prevent the street railway company from laying its tracks on that portion of the turnpike is not so. This doubt arises, not out of the fact, merely, that the owner of the land is a railroad company, but out of the evidence relative to the purpose for which the land is held. In other words, under the evidence and the findings of the court below based thereon it is not clear that the strips of land lying on either side of the plaintiff's bridge, viaduct and embankment are not constituent parts of its roadway or right of way, and therefore, it is not clear that the act sought to be restrained involves more than a crossing of the plaintiff's railroad within the meaning of section 18 of the act of 1889, and the principle of the cases last cited. This is as far as we need go, or are disposed to go, in the present case. For it is to be borne in mind that the plaintiff is in a court of equity, and is asking its aid to prevent an act which will in no way interfere with the operation of its railroad or the use of its land abutting on the turnpike for rail-

road purposes. The well settled principle is applicable that an injunction will not be awarded, in a doubtful case, where the benefit to the complainant is entirely disproportionate to the injury to the respondent. In no class of cases has the doctrine of balancing injuries been applied with greater liberality than in the street railway cases that have arisen since 1889. "Equity does not enforce a strictly legal right, regardless of consequences. It is said that an injunction is of grace. This does not mean that a chancellor may grant or refuse an injunction as he pleases, but that his action is controlled by considerations of conscience. He does that, which in good conscience he ought to do. The question in each case must depend upon the circumstances out of which it grows, and requires the exercise of judgment, in determining the equities involved:" Heilman v. Lebanon and Annville St. Ry. Co., 180 Pa. 627. The same equitable principle was enforced, in a case where the plaintiff had filed a bill in equity, before that part of the highway in front of his premises had been entered upon by the defendant company, but had not moved for special injunction, nor taken steps to bring the cause to an issue and hearing, until after the road was built, and in full operation. The plaintiff planted himself on his legal right, and Justice MITCH-ELL, who rendered the opinion of the court, conceded that "if he were in a court of law, his position would be incontestable," but after referring to his delay in prosecuting the suit, the change of conditions during this delay, the disproportion of the benefit to the plaintiff to the injury to the respondent and the public, which would result if an injunction mandatory and destructive in its character were granted, and to the general principles which ought to guide a chancellor in such a case, he concluded as follows: "In view of the learned judge's findings in the present case, on the loss to the defendant, the inconvenience to the public, the smallness of the injury to the complainant, and its easy compensability in money, he could scarcely have reached any other conclusion, than that the complainant, however clear his right, should be left to his remedy in damages:" Becker v. Lebanon, etc., St. Ry. Co., 188 Pa. 484. For all the stronger reason a chancellor ought to consider all these things when the plaintiff's right depends upon a matter of fact concerning which the evidence is such as to permit

reasonable men to arrive at different conclusions. This is as plain, if not a plainer case than that last cited, for the application of the equitable principles; for, to say the least, the legal right of the complainant here to exclude the defendant from the turnpike at the point in question is, under the evidence, not clear and free from doubt.

Decree affirmed at appellant's cost.